**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

NOVARC TECHNOLOGIES, INC.,

        Plaintiff,

v.

TECNAR AUTOMATION LTÉE,

        Defendant.

Case No. 2:26-cv-552

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Novarc Technologies, Inc. ("Novarc") brings this action and makes the following allegation of patent infringement relating to U.S. Patent No. 12,304,013 (the "'013 Patent" or "Patent-in-Suit"). Defendant Tecnar Automation Ltée ("Tecnar") infringes the '013 Patent in violation of the patent laws of the United States of America, 35 U.S.C. § 1 *et seq*.

## THE PARTIES

1. Novarc is a corporation organized and existing under the laws of British Columbia, Canada, with its principal place of business located at 4505 Still Creek Ave., Burnaby, BC Canada V5C 5W1.

2. On information and belief, Tecnar is a corporation organized and existing under the laws of Quebec, Canada with its principal place of business at 1021 Marie-Victorin Saint-Bruno QC Canada J3V 0M7.

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, Title 35 of the United States. Accordingly, the Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Tecnar.  Tecnar conducts business and has committed acts of patent infringement and/or has induced acts of patent infringement by others in this judicial District, the State of Texas, and elsewhere in the United States.  Tecnar has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Tecnar regularly sells (either directly or indirectly) its products within this judicial District. For example, Tecnar has placed and continues to place infringing products into the stream of commerce via an established distribution channel, such as its partner distributors, with the knowledge or understanding that such products are being and will continue to be sold in this judicial District and within the State of Texas.  Tecnar is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and the Texas Long Arm Statute, due at least to its substantial and pervasive business in this State and this judicial District, including at least part of its infringing activities alleged herein and deriving substantial revenue from goods sold to Texas residents.

5.      Tecnar's infringing activities constitute a portion of Tecnar's substantial business activities in the State of Texas and in this judicial District. As alleged herein, Tecnar purposefully avails itself of the privilege of conducting its business activities in the State of Texas and in this judicial District, and, thus, submits itself to the jurisdiction of this Court.

6.      Tecnar regularly does and solicits business, engaging in other persistent conduct targeting residents of Texas and residents of this judicial District, and/or derives substantial revenue from infringing goods offered for sale, sold, and imported to and targeting Texas residents and residents of this judicial District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.  For example, Tecnar advertises that PWC Industries, a Texas based company, is using the Tecnar

Rotoweld 3.0.  *See, e.g.*,  https://rotoweld-cn.tecnar.com/en/case-studies/pwc-industries/.   As another example, Tecnar advertises that Thermacor Process, a Texas based company, has used the Tecnar Rotoweld in their facilities since 1997, and is continuing to use Rotoweld machines 40-60 hours a week.  *See, e.g.*,  https://rotoweld-cn.tecnar.com/en/case-studies/thermacor/.   As another example, Tecnar advertises that Lindsayca, a Texas based company, is commissioning a new Rotoweld 3.0 in its facility.  *See, e.g.*,  https://www.linkedin.com/posts/tecnar-rotoweld_we-are-particularly-proud-to-announce-the-activity-7439720930467123200-DLFP/.

7.    Tecnar, directly via its agents and distribution partners, retailers, reseller partners, and other service providers in the United States, has placed and continues to place infringing products into the U.S. stream of commerce.  Tecnar has placed such products into the stream of commerce with the knowledge and understanding that such products are, will be, and continue to be sold, offered for sale, and/or imported into this judicial District and the State of Texas.  For example, GSI Machinery, a self-described partner of Tecnar / Rotoweld, is a Houston, Texas based company that "sells and supports locally the Rotoweld 3.0 manufactured by Tecnar." https://www.gulfstatesindustrialinc.com/post/choosing-an-automated-pipe-welding-system;  *see also*  https://www.instagram.com/reel/DIBjbhiA9Ad/,  https://www.linkedin.com/feed/update/urn:li:activity:7441984145398018048/,  https://www.linkedin.com/company/gsimachinery/posts/,  https://www.gulfstatesindustrialinc.com/automated-pipe-welding-machine.   Based on Tecnar's connections and relationships, including supply contracts and other agreements with the United States- and Texas-based distributors and suppliers, such as at least GSI Machinery, Tecnar knows and has known that the State of Texas is a termination point of the established distribution channels for infringing Tecnar products.  Tecnar has purposefully directed its activities at the State of Texas, and should reasonably anticipate being brought into this Court, at least on this basis.

8.      In the alternative, this Court has personal jurisdiction over Tecnar under Federal Rule of Civil Procedure 4(k)(2), because the claims for patent infringement in this action arise under federal patent law, Tecnar is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction over Tecnar is consistent with the United States Constitution.

9.      Because this Court has personal jurisdiction over Tecnar—a foreign corporation—venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c)(3) and 1400(b).

## FACTS AND PATENTS IN SUIT

10.     This action for patent infringement arises out for Tecnar's infringement of Novarc's U.S. Patent No. 12,304,013 (the "Asserted Patent" or the "'013 Patent"), entitled "Systems and Methods for Seam Tracking in Pipe Welding" and duly and legally issued on May 20, 2025.  The '013 Patent is directed to solving the technical challenges of automated seam tracking and weld parameter control in robotic pipe welding operations.  The '013 Patent names Neda Eskandari, Neda Parnian, Ehsan Moosavimehr, Abdolreza Abdhollahi, and Mark Lowson as inventors.  A true and correct copy of the '013 Patent is attached hereto as Exhibit 1.

11.     Novarc Technologies, Inc. is the assignee and owns all right, title, and interest to the '013 Patent and possesses all substantive rights in and to that patent, including the sole and exclusive right to prosecute this action and enforce the '013 Patent against infringers, and to collect damages for all relevant times.

## COUNT I
## DIRECT INFRINGMENT OF U.S. PATENT NO. 12,304,013

12.     Novarc incorporates by reference the allegations in Paragraphs 1-11 as if fully set forth herein.

13.     On information and belief, Tecnar has directly infringed, and continue to directly infringe, literally or under the doctrine of equivalents, the claims of the '013 patent by making, using, offering to sell, and/or selling in the U.S. and importing into the U.S. its Rotoweld 3.0 and PerfectPass-iQ software ("the Accused Products"), which are covered by the claims, including at least claim 1 of '013 patent.

14.     For example, the Accused Products embody every limitation of at least Claim 1 of the '013 Patent, literally or under the doctrine of equivalents, as set forth below.  Likewise, a claim chart comparing independent claim 1 of the '013 Patent to the Accused Products as described in Tecnar's own publications is attached as Exhibit 2. The further descriptions below, which are based on publicly available information, are preliminary examples and are non-limiting.

15.     Claim 1 recites:

1.  A method for controlling a robotic welding system during automatic welding together of two pipe sections in a spool welding operation wherein the two pipe sections are held in fixed relation to each other by a plurality of stitches at an interface between the two pipe sections, the robotic welding system having a torch arm holding a welding torch, a controller for controlling motion of the torch arm, and a processor operably coupled to the controller and a camera positioned to capture images of an area around a welding arc, and a positioner on which the two pipe sections are mounted for rotating the two pipe sections in relation to the robotic welding system, the method comprising:

receiving, by the processor, an arc on signal from the controller which controls the robotic welding system to start the welding operation and controls the positioner to start rotating the two pipe sections;

rotating the two pipe sections and the robotic welding system in relation to each other while continuously:

capturing and buffering a plurality of frames of an interface between the two pipe sections with the camera while the welding operation is ongoing;

processing the plurality of frames to determine a seam position while the welding operation is ongoing;

controlling the robotic welding system to move the torch arm to track the seam position while the welding operation is ongoing;

processing the plurality of frames to detect whether the welding torch is over one of the plurality of stitches while the welding operation is ongoing;

determining a stitch start in response to detecting the welding torch moving over one of the plurality of stitches while the welding operation is ongoing;

controlling the robotic welding system to adjust welding parameters in response to determining the stitch start while the welding operation is ongoing;

determining a stitch end in response to detecting the welding torch moving past one of the plurality of stitches while the welding operation is ongoing; and

controlling the robotic welding system to adjust welding parameters in response to determining the stitch end while the welding operation is ongoing.

16.    Tecnar makes and offers the Rotoweld 3.0 which is a "robotic welding system" and PerfectPass-iQ software which controls the robotic welding system.  Tecnar describes the Rotoweld 3.0 as "[t]he only fully integrated design for 1G robotic pipe welding" for "pipe spool fabricat[ion]" and the PerfectPass-iQ on the Rotoweld 3.0 "delivers true automatic welding."  Ex. 2 (Fully Integrated Design) at 1; Ex. 3 (Welding Intelligence) at 1.

17.    The Rotoweld 3.0 and PerfectPass-iQ system welds "two pipe sections [] held in fixed relation to each other by a plurality of stitches at an interface between the two pipe sections." Rotoweld technology requires the pipes to be prepared using root tacks or stitches which need to be feathered with a grinder to let the automated welding adapt to it properly.



*PerfectPass-iQ*, YouTube (posted by Tecnar Channel, Dec. 21, 2023), at 1:08, https://www.youtu be.com/watch?v=yMTF6o8PnNU.  Tacks or stitches are small and temporary welds that hold parts together ready for final welding.  The tacked parts are two pipe sections:



*Rotoweld 3.0 Twin Bay / HD*, YouTube (posted by Tecnar Channel, Sep. 2, 2020), at 0:08, https://www.youtube.com/watch?v=eaFDhkrJngU.

18.    The Rotoweld 3.0 and PerfectPass-iQ system has "a torch arm holding a welding torch."  For example, Tecnar describes that Rotoweld 3.0's "welding arm, driven by zero-backlash harmonic drives, will position itself automatically" and the Rotoweld 3.0 ensures "reproducible positioning of the welding torch."  Ex. 2 (Fully Integrated Design) at 2.

19.    The Rotoweld 3.0 and PerfectPass-iQ system has "a controller for controlling motion of the torch arm."  The images from Tecnar's brochures, website, and videos indicate that the Rotoweld 3.0 uses such a controller:



Ex. 4 (Rotoweld 3.0 Product Brochure) at 19.

20.     The Rotoweld 3.0 and PerfectPass-iQ system has "a processor operably coupled to the controller and a camera positioned to capture images of an area around a welding arc."  Tecnar advertises that the Rotoweld 3.0 has a "LED vision system" akin to a camera.  Ex. 2 (Fully Integrated Design) at 4.  This camera or camera system captures images around the welding arc as the Rotoweld user interface allows a "[l]arge centred image to ease torch positioning using the LED vision system and  increase welding precision."  *Id.* at 8.  The images from Tecnar's brochures, website, and videos indicate that a processor is operably coupled to the controller and camera:



Ex. 4 (Rotoweld 3.0 Product Brochure) at 19.

21.     The Rotoweld 3.0 and PerfectPass-iQ system has "a positioner on which the two pipe sections are mounted for rotating the two pipe sections in relation to the robotic welding system."  Tecnar describes the Rotoweld 3.0 as having pipe stands and rotators that can "handle up to 15,000 lbs. of weight," "up to 3- to 48-inch diameter pipes," and "deliver 50,000 lbs./inch of torque." Ex. 2 (Fully Integrated Design) at 5, 6.  These positioners align the pipes with the welding robot and rotate the pipes around the welding system.

22.     The Rotoweld 3.0 and PerfectPass-iQ system "receiv[es], by the processor, an arc on signal from the controller which controls the robotic welding system to start the welding operation and controls the positioner to start rotating the two pipe sections."  Tecnar describes the PerfectPass-iQ on Rotoweld 3.0 "delivers true automatic welding" where the user only has to "[j]ust press start" and "watch the PerfectPass-iQ make perfect welds every time."  Ex. 3 (Welding

Intelligence) at 1, 3.  On information and belief, the signal to start the welding operation passes from the start button on the controller, through a processor, to the robotic welding system.

23.    The Rotoweld 3.0 and PerfectPass-iQ system "rotate[s] the two pipe sections and the robotic welding system in relation to each other while continuously."  As described above the Rotoweld 3.0 and PerfectPass-iQ system has rotators.  Ex. 2 (Fully Integrated Design) at 6. Further, it is clear from Rotoweld 3.0 video demonstrations that the pipe is rotating in relation to the welding system:



*Rotoweld 3.0 – 8" SCH 40 - Welding Time*, YouTube (posted by Tecnar Channel, Sept. 26, 2024), at 05:25, https://www.youtube.com/watch?v=BHBFynFXl7I.



*Id.* at 5:31.

24.     The Rotoweld 3.0 and PerfectPass-iQ system "captur[es] and buffer[s] a plurality of frames of an interface between the two pipe sections with the camera while the welding operation is ongoing."  It is clear from Rotoweld 3.0 video demonstrations that the camera system is capturing the interface between the pipe section that is being welded.  In the YouTube video "*Rotoweld 3.0 - 8″ SCH 40 - Welding Time*" the camera is capturing the pipe section interface for at least the 7 minute and 48 seconds of welding time.  *Id.* at 0:55-8:56.

25.     The Rotoweld 3.0 and PerfectPass-iQ system "process[es] the plurality of frames to determine a seam position while the welding operation is ongoing" and "control[es] the robotic welding system to move the torch arm to track the seam position while the welding operation is ongoing."  Throughout "*Rotoweld 3.0 - 8″ SCH 40 - Welding Time*," the seam that is being welded is continually in the center of the frame throughout the welding process.  *Id.*  Tecnar advertises that the Rotoweld 3.0 user interface keeps a large centered image using its camera system, that the

welding arm "will position itself automatically," and that PerfectPass-iQ continually adjusts the system to center the joint.  Ex. 2 (Fully Integrated Design) at 3; Ex. 3 (Welding Intelligence) at 2.

26.     The Rotoweld 3.0 and PerfectPass-iQ system "process[es] the plurality of frames to detect whether the welding torch is over one of the plurality of stitches while the welding operation is ongoing; determin[es] a stitch start in response to detecting the welding torch moving over one of the plurality of stitches while the welding operation is ongoing; control[s] the robotic welding system to adjust welding parameters in response to determining the stitch start while the welding operation is ongoing; determine[s] a stitch end in response to detecting the welding torch moving past one of the plurality of stitches while the welding operation is ongoing; and control[s] the robotic welding system to adjust welding parameters in response to determining the stitch end while the welding operation is ongoing."  In Tecnar's YouTube video "PerfectPass-iQ," the Rotoweld 3.0 and PerfectPass-iQ system does not detect a tack or stitch at 1:39 and the oscillation width welding parameter is 0.66, the travel speed parameter is 3.8 and the wire speed parameter is 112.5.



*PerfectPass-iQ*, YouTube (posted by Tecnar Channel, Dec. 21, 2023), at 1:39,

https://www.youtube.com/watch?v=yMTF6o8PnNU.

At approximately the 1:40 mark, the tack or stitch is detected and the oscillation width welding parameter is adjusted to 3.50, the travel speed parameter is adjusted to 5.9, and the wire speed parameter is adjusted to 131.0.



*Id.* at 1:40.

Just before the 1:41 mark, the tack or stitch is no longer detected and the oscillation width welding parameter is adjusted to 0.40, the travel speed parameter is adjusted to 4.9, and the wire speed parameter is adjusted to 122.0.



*Id.* at 1:40.

The same video explicitly states that PerfectPass-iQ modifies parameters upon detection of a stitch:



*Id.* at 1:08.

Accordingly, the Rotoweld 3.0 and PerfectPass-iQ system processes and determines when a stitch starts and ends and adjusts welding parameters in response to determining the stitch start or end.

27.    Attached hereto as Exhibit 6 is an exemplary preliminary claim chart that demonstrates on an element-by-element basis how the Rotoweld 3.0 and PerfectPass-iQ system satisfies each limitation of exemplary Claim 1.  Exhibit 6 is incorporated by reference as though fully set forth herein.

28.    The above allegations of infringement are preliminary and are therefore subject to change.

29.    Tecnar has caused Novarc damage by direct infringement of the claims of the '013 patent.

30.    In accordance with 35 U.S.C. § 287, Tecnar has had actual notice and knowledge of the '013 patent by at least May 13, 2025 and no later than the filing of this Complaint.

- 16 -

31.     Tecnar has known that Novarc was the owner of the patent-in-suit since at least May 13, 2025 when counsel for Novarc sent Tecnar a letter, attached hereto as Exhibit 5.  In that May 13 letter, Novarc explained that Tecnar's Rotoweld 3.0 and PerfectPass-iQ system infringes Novarc's patent portfolio which includes the '013 Patent and, among other things, offered Tecnar a license to Novarc's patent portfolio.

32.     In addition, and at minimum, Tecnar was aware of and has been aware of the patent-in-suit since at least July 6, 2026, which is the date the Original Complaint in the above captioned action was filed.

33.     At least since the date that Tecnar learned of the '013 patent, Tecnar's infringement has been deliberate and willful.

34.     On information and belief, Tecnar was, at a minimum, willfully blind to the existence of the '013 patent, Tecnar's infringement thereof, as well as the infringement of their customers and others.

35.     Tecnar has caused Novarc damage by direct infringement of the claims of the '013 patent.

36.     On information and belief, Tecnar continues, without license, to make, use, import, market, offer for sale, and/or sell in the United States services or products that infringe the '013 patent.

37.     Tecnar has directly infringed and continues to directly infringe the '013 patent by engaging in acts constituting infringement under 35 U.S.C. § 271(a), including but not necessarily limited to one or more of making, using, selling, and offering to sell, in this District and elsewhere in the United States, and importing into the United States, the Accused Products or components and services thereof.

38.     Tecnar's infringement of the '013 patent has injured Novarc in its business and property rights.  Novarc is entitled to recover monetary damages for the injuries arising from Tecnar's infringement in an amount to be determined at trial.

39.     Tecnar's infringement of the '013 patent has caused irreparable harm to Novarc and will continue to cause such harm unless and until Tecnar's infringing activities are enjoined by this Court.

40.     Tecnar's infringement of the '013 patent is willful. Tecnar continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Tecnar knew or should have known that its actions constituted an unjustifiably high risk of infringement of the '013 patent. Tecnar's continuing infringement of the '013 patent after the filing of this Complaint is particularly egregious.

41.     Tecnar's infringement of the '013 patent is exceptional and entitles Novarc to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

42.     The full extent of Tecnar's infringement is not presently known to Novarc.  Novarc makes this preliminary identification of infringing products and/or services and infringing claims in Count One without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise

**COUNT II**
**INDIRECT INFRINGMENT OF U.S. PATENT NO. 12,304,013**

43.     Novarc incorporates by reference the allegations in Paragraphs 1-42 as if fully set forth herein.

44.     Tecnar has known that it is infringing the '013 patent by no later than the filing of this Complaint.

45.     In addition to directly infringing the '013 patent, as discussed above with respect to Count One, Tecnar knew or was willfully blind to the fact that it was inducing infringement of the '013 patent under 35 U.S.C. § 271(b) by instructing, encouraging, directing, and requiring third parties, including its customers, to directly infringe by using the Accused Products in the United States.

46.     Tecnar has knowingly and actively aided and abetted, encouraged, and contributed to the indirect infringement of the '013 patent by instructing and encouraging its customers, purchasers, users, developers, vendors, partners, and manufacturers to meet the elements of the '013 patent with the Accused Products, as described above. Such instructions and encouragement included, but were not limited to, advising third parties to use the Accused Products in an infringing manner through direct communications, training and support materials, and customer support regarding how to configure and use the Accused Products, by advertising and promoting the use of the Accused Products in an infringing manner, and distributing development kits, development machine images, tutorials, presentations, webinars, guidelines, videos, manuals, white papers, and trainings to third parties on how the Accused Products must be used. *See, e.g.*, Ex. 4 (Rotoweld 3.0 Product Brochure).

47.     Tecnar has had actual knowledge of its indirect infringement its acts induced and/or contributed to such since no later than the filing of this Complaint

48.     Tecnar has caused Novarc damage by direct and/or indirect infringement of the claims of the '013 patent.

49.     Tecnar's infringement of the '013 patent has injured Novarc in its business and property rights. Novarc is entitled to recover monetary damages for the injuries arising from Tecnar's infringement in an amount to be determined at trial.

50.     Tecnar's infringement of the '013 patent has caused and is continuing to cause damage and irreparable harm to Novarc and will continue to cause such harm unless and until Tecnar's infringing activities are enjoined by this Court.

51.     Tecnar's infringement of the '013 patent is willful. Tecnar continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Tecnar knew or should have known that its actions constituted an unjustifiably high risk of infringement of the '013 patent. Tecnar's continuing infringement after the filing of this Complaint is particularly egregious.

52.     Tecnar's infringement of the '013 patent is exceptional and entitles Novarc to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C.§ 285.

53.     The full extent of Tecnar's infringement is not presently known to Novarc. Novarc makes this preliminary identification of infringing products and/or services and infringing claims in Count Two without the benefit of discovery or claim construction in this action, and expressly reserves the right to augment, supplement, and revise its identifications based on additional information obtained through discovery or otherwise.

## **JURY DEMAND**

Pursuant to Rule 38, of the Federal Rules of Civil Procedure, Novarc demands a trial by jury on all issues triable as such.

## **PRAYER FOR RELIEF**

WHEREFORE, Novarc respectfully requests the following relief:

A.    A judgment be entered that Tecnar directly and/or indirectly infringes or has directly and/or indirectly infringed one or more claims of the Asserted Patent;

B.    That, in accordance with 35 U.S.C. § 283, Tecnar and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting

on behalf or in active concert or participation with any of them, including partners, distributors, resellers and customers, be preliminarily and permanently enjoined from (1) infringing on the Asserted Patent; (2) making, using, selling, offering for sale and/or importing any products and/services that infringe the Asserted Patent; and (3) inducing others to infringe the Asserted Patent;

C.   An award of damages, together with prejudgment and post-judgment interest sufficient to compensate for Tecnar's infringement under 35 U.S.C. § 284;

D.   A judgment holding Tecnar's infringement of the Asserted Patent to be willful, and a trebling of damages pursuant to 35 U.S.C. § 284;

E.   A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of Novarc's attorneys' fees and costs;

F.   An award of an ongoing reasonable royalty for any post-verdict and post-judgment infringement of the Asserted Patent; and

G.   Such other and further relief the Court may deem just and proper.

Dated: July 6, 2026                         THOMPSON HINE LLP


                                            By: */s/ Melissa R. Smith*
                                            Rachael Rodman
                                            Rachael.Rodman@thompsonhine.com
                                            41 South High Street, Suite 1700
                                            Columbus, Ohio 43215
                                            Telephone:    614.469.3200
                                            Facsimile:    614.469.3361

                                            Melissa R. Smith
                                            Texas Bar No. 24001351
                                            GILLIAM & SMITH LLP
                                            303 South Washington Avenue
                                            Marshall, TX 75670
                                            Telephone: (903) 934-8450
                                            melissa@gillamsmith.com

                                            *Attorneys for Plaintiff,*
                                            *Novarc Technologies, Inc.*